# Exhibit A

FILED
TONI HELLON
CLERK, SUPERIOR COURT
12/18/2015 9:46:00 AM
CASE C20155598

Brian C. Lake (#020543)
Kendra L. Kisling (#030959)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
BLake@perkinscoie.com
KKisling@perkinscoie.com
docketphx@perkinscoie.com

*Attorneys for Plaintiff*

## ARIZONA SUPERIOR COURT

## PIMA COUNTY

| | |
|---|---|
| MLCFC 2006-3 – 811 E. WETMORE RD LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> SEASONS PARTNERS LLC, an Arizona limited liability company, JOHN AND JANE DOES I–X; and WHITE CORPORATIONS I–X, <br><br> Defendants. | No. C20155598 <br><br> **ORDER APPOINTING RECEIVER** |

The Court, having considered the pleadings on file herein, and for good cause being shown,

IT IS HEREBY ORDERED:

A.  <u>APPOINTMENT OF RECEIVER</u>. Asset Campus Housing (ACH), whose business address is 675 Bering Dr., Suite 200, Houston, TX 77057, by and through its CFO, Randall Husmann, is hereby appointed receiver (the "Receiver") in this action solely for and on behalf of Defendant Seasons Partners, LLC (the "Borrower"), with such appointment to be

effective immediately, conditioned that the Receiver shall faithfully discharge its duties in this action and obey the orders of this Court and provided that the Receiver shall forthwith file:

    (i)      The Certificate of Appointment of Receiver;

    (ii)     A bond in the sum of $ 224,550.00; and

    (iii)    An Oath of Receiver as set forth in Ariz. R. Civ. P. 66(b)(2).

B.    <u>DUTIES OF RECEIVER</u>. The Receiver is granted all of the following powers and duties:

    (a)    *Possession.* The power to take immediate and exclusive possession of the Property of the Borrower—The Seasons Apartments, located at 811 East Wetmore Road, Tucson, Arizona 85719 ("Property of the Borrower"), as is more particularly described in the Verified Complaint ("Complaint") (including, without limitation, all land, buildings, structures, service contracts, leases, records, files, policies, equipment, chattels, and fixtures related thereto), plus all the rents, prepaid rents, security deposits, storage fees, parking fees, lease payments, royalties, issues, profits, revenue and income thereof (collectively, the "Rents and Profits");

    (b)    *Operation and Management.* The power to operate and manage the Property of the Borrower and the ongoing business on the Property (including, without limitation, the power to eject tenants or repossess personal property, as provided by law, for breaches of the conditions of leases or other agreements, and maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent), and to safeguard the Property making such expenditures and repairs as are needed to keep the Property in good and rentable condition, and to pay the costs of such expenditures and repairs from funds of the receivership estate to the extent there are funds available, but only such costs as arise out of the Receiver's operation of the Property subsequent to the Receiver's appointment and not any bills of any prior or current owners or operators unless the payment of such sums is essential to the continued operation of the Property as determined by the Receiver in its sole discretion; *provided, however,* that in exercising its operation and management duties, the Receiver is not permitted to change the name

of the Property from "Seasons" or "The Seasons" without first obtaining the prior written consent of Plaintiff, which consent may be withheld in Plaintiff's sole discretion;

  (c) *Receiver's Agents*. The power to appoint or hire such agents, independent contractors, and employees as may be needed to assist the Receiver in managing the Property of the Borrower, including a property management company, if appropriate, provided the amount of compensation paid to such agents or firm must be comparable to that charged by similar companies for similar services;

  (d) *Legal Counsel*. The power to hire independent legal counsel, if needed and as determined by the Receiver in its sole discretion, to, among other things, defend or commence any lawsuit with regard to the Property of the Borrower, and to pay such counsel for their services at rates the Receiver deems appropriate for the services provided;

  (e) *Reimbursement of Receiver*. The power to reimburse the Receiver for its out-of-pocket expenditures as well as any support staff as the Receiver may provide to the receivership estate, including any employees who directly assist the Receiver in carrying out its duties;

  (f) *Existing Bank Accounts*. The power to issue demands for the freezing and turnover of funds upon any financial institution which the Receiver has determined is a depository of funds belonging to, or arising from, the Borrower, including accounts that Borrower's property manager may have established on its behalf, whether such accounts be titled in the name of the Borrower or not, and to indemnify the institution upon whom such demand is made on behalf of the receivership estate if the Receiver deems such indemnification necessary; provided that the Receiver shall have no power to issue any demands affecting the assets of Variant Holding Company, LLC, a debtor and debtor in possession in a pending chapter 11 case before the United States Bankruptcy Court for the District of Delaware, or its affiliates and subsidiaries, other than the Borrower;

  (g) *Utility Services and Deposits*. The power to issue demands, in the name of the receivership estate, upon public utilities which the Receiver determines provide services to the

-3-

Case 4:17-bk-01746-BMW Doc 4-1 Filed 02/27/17 Entered 02/27/17 17:39:28 Desc
Exhibit A Page 4 of 13

No. C20155598

Property of the Borrower and to transfer such services, together with any deposits held by the utility, to the exclusive control of the Receiver;

(h) *Post Office Box.* The power to issue demands in the name of the receivership estate upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by Borrower and/or its agents, successors, assigns, and managing members for the receipt of rent, income, and other mail related to the Property of the Borrower;

(i) *Sources of Revenue.* The power to identify all revenue sources of the Borrower or the Property, be they rent, fees, royalties, or otherwise described, and make demand upon all payees, lessees, tenants or any other persons or entities, to make remittances of future sums and past due balances solely to the Receiver;

(j) *Demand for Deposits.* The power to demand deposits from available leases and other records, compute the amount of deposits collected by Borrower and/or its agents, successors, assigns, and managing members (to the extent those members personally collected such deposits related to the Property of the Borrower) from tenants for security, cleaning, pets, or any other purposes, and demand the immediate surrender to the Receiver of such deposits by Borrower and/or its agents, successors, assigns, and managing members who collected them related to the Property of the Borrower, and to take appropriate action to enforce the turnover of such deposits;

(k) *Pre-Receivership Bills.* The power to pay only current operating expenses associated with the Property incurred by the Receiver subsequent to its appointment, including without limitation, the Receiver's fees and administrative expenses, with the limitation that the Receiver may not use funds of the receivership estate to pay any bills for goods or services contracted for or provided in connection with the Property, or to Borrower and/or its agents, successors, assigns, and managing members related to the Property of the Borrower, prior to the date of the Order unless such payment is reasonably necessary or beneficial to enable the Receiver to continue to operate the Property as determined by the Receiver in its sole discretion;

(l) *Insurance.* The power to determine whether the Property is adequately insured, and if not, to order and pay for such insurance from available funds; provided that such insurance shall, at a minimum, comply with the Loan Documents;

(m) *Right to Lease.* The power to enter into leases for all or part of the Property, without the need to seek prior approval from the Court, provided that (i) the Receiver obtains any necessary required approvals as set forth in the Loan Documents; and (ii) any lease is upon terms and conditions which are comparable to the terms and conditions upon which similar properties are offered for rent in the marketplace as determined by the Receiver in its sole discretion, subject to Plaintiff's approval if required pursuant to the Loan Documents;

(n) *Tenant Improvements.* The power to expend sums up to $5,000 from the receivership estate which, in the Receiver's opinion and subject to its approval, are required to make the Property rentable;

(o) *Advance by Plaintiff.* The power to borrow from Plaintiff, with or without the necessity of issuing Receiver's Certificates, such funds as may be required by the Receiver to cover operating expenses of the receivership, including but not limited to the Receiver's fees and costs, as determined by the Receiver in its sole discretion, provided that Plaintiff consents to making such advances. Plaintiff may add the amount of such advances to the Loan, and shall be entitled to earn interest on such advances at the rate then payable on the Loan;

(p) *Request Police Assistance.* The power to request assistance of law enforcement officials when taking possession of the Property, or at any other time during the term of the receivership, if in the opinion of the Receiver such assistance is necessary;

(q) *Operating Budget.* Within 30 days from the date of appointment, the Receiver shall prepare, if appropriate, projected annualized operating budgets for the Property, based upon operating data obtained from Borrower, if available, and other sources where the use of a budget is appropriate;

(r) *Distribution of Funds.* If the Receiver determines that the receivership estate possesses funds in excess of that needed to pay all of its operating costs, including property

taxes and Receiver's fees, and if there are no other outstanding bills or obligations, then the Receiver may, at its discretion, make distributions to Plaintiff, with such sums to be applied by Plaintiff in the manner provided under the Loan Documents, or as otherwise determined by this Court, with the understanding and agreement of Borrower that any such distribution shall not affect the underlying foreclosure action or modify Borrower's performance dates or obligations in any way;

(s) *Monthly Reporting*. The Receiver shall provide a computerized monthly summary of revenues and disbursements on a "cash reporting basis" as that term is commonly understood within the accounting profession, together with the following information to the extent not contained in the foregoing summary: a balance sheet; a statement of income and expenses; a statement of cash flows; a cash flow forecast addressing the remaining calendar year; a budget versus actual variance report; a detailed rent roll showing the name of each tenant, and for each tenant, the space occupied, the lease beginning and expiration date, the rent payable, the aged accounts receivable, the rent paid to date, the security deposit being held for said tenant, each in reasonable detail; a leasing activity report; an aged payables report; an aged receivables report; a capital expenditures report; bank statements with monthly reconciliations, within a reasonable time period, but in no event later than the 15th day of the following month, to the litigants and/or any other interested party who requests, and is entitled to, such a report. Within 45 days of the conclusion of the receivership, the Receiver shall file with the Court a final summary accounting for the full term of the receivership;

(t) *Payment of Receiver*. The Receiver shall be entitled to: (1) a receiver fee of 1.25% of gross monthly collections; (2) a management fee of 3.75% on gross monthly collections with a $6,000 monthly minimum; and (3) a travel fee limited to $10,000 per year per a budget approved by Plaintiff and the Court;

(u) *Marketing and Sale of Property*. Upon Plaintiff's prior approval, the Receiver is authorized to place the Property for sale on the market, retain any marketing analysts, advertisers, or brokers (with the retention of any broker subject to Plaintiff's approval), and

undertake any and all other duties associated with marketing and sale of the Property, including executing documents necessary for consummation of a sale, with such sale being subject to Plaintiff and Court approval;

      (v)    *Disbursements.* Notwithstanding anything to the contrary in the Court's order, the Receiver shall not expend or disburse more than $5,000.00 at any one time or make any material modification or capital improvement to the Property, without the approval of Plaintiff, and nothing in the Court's order shall obligate Plaintiff to lend or disburse any funds or amounts to the Receiver; and

      (w)    *Access.* The Receiver shall allow Plaintiff, its counsel, appraisers, and other independent third-party consultants engaged by Plaintiff or its counsel access to the Property at all reasonable times to inspect the Property and all books and records, and to cooperate with Plaintiff, its counsel, appraisers and other independent third-party consultants to evaluate the Property.

    C.    <u>BORROWER'S DUTIES</u>. Borrower, and its agents, employees, managers, members, directors, partners, representatives and affiliates and through its the Property Manager—the person or firm charged with operating the Property of the Borrower, shall:

      (a)    *Cooperation.* To the extent feasible and without incurring any out-of-pocket expense, cooperate with the Receiver and disclose: all information and all records relevant to the Property and its operation, including all names of all vendors and suppliers and all bills, service contracts, warranty information, and contracts with vendors in effect with respect to the Property, and all communications and correspondence pertinent thereto for all contractors and/or vendors who have or currently provide services at the Property; a current list of the occupants of the Property, all original leases along with tenant files, histories, tenant ledgers for each occupant, and all communications and correspondence pertinent thereto; any and all files relating to contracts, bids or other materials relating to any contractor work performed at the Property; any and all payroll records, employee files, applications and other materials relevant to those persons employed at the Property for the two years preceding the date of this Order and for

Case 4:17-bk-01746-BMW    Doc 4-1   Filed 02/27/17   Entered 02/27/17 17:39:28   Desc
Exhibit A    Page 8 of 13

No. C20155598

previous years at the Receiver's reasonable request; any and all insurance policies covering the Property, and all communications and correspondence pertinent thereto; any and all records related to pending or current litigation related to the Property; information concerning all bank accounts, and tax identification numbers. Borrower shall turn over to the Receiver any material relevant and necessary in the opinion of the Receiver to the fulfillment of the tasks and objectives set forth in this Order. Borrower shall prepare and provide to the Receiver and Plaintiff an itemization as to the Property of all accounts payable and receivable, all rents collected, and all management fees paid or payable. All tenants of the Property must pay their rent to the Receiver; and Borrower will cooperate with the Receiver to assure as such, including sending proper written notice to all tenants, in a form approved by and acceptable to the Receiver, directing that all payments of rents or other monies due shall be made to the Receiver. Any other persons or entities owing sums to Borrower with respect to the Property which would otherwise be payable to Borrower must likewise pay such sums to the Receiver, including any portion thereof which represents payment for past due rents or services, and Borrower will cooperate with the Receiver to assure as such, including sending proper written notice to all persons or entities owing sums to Borrower with respect to the Property, in a form approved by and acceptable to the Receiver, directing that all payments of such sums shall be made to the Receiver. Any reasonable, actual, out-of-pocket expenses incurred by the Property Manager to comply with the terms of this paragraph shall be reimbursed by the Receiver to the Property Manager and shall be expenses of the receivership;

   (b) *Surrender of Assets.* Turn over to the Receiver, and instruct its agents, employees, managers, members, directors, partners, representatives and affiliates to turn over to the Receiver, all profits, rents, pre-paid rents, security deposits, cash collateral (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, including, but not limited to, amounts that Borrower may have deposited with utility companies, all rights to unearned insurance premiums or claim proceeds, or pre-payments of any kind, and all other cash and cash equivalents), other sums relating to the use, enjoyment,

possession, improvement or occupancy of all or any part of the Property, and other assets of the receivership estate; all keys; contracts; all loans (if any) between Borrower and any affiliated entities and/or between Borrower and any third parties (excluding Plaintiff), together with any communications or correspondence files relating thereto; all receivables; and all other things of value; and to cooperate with the Receiver in all ways reasonable as the Receiver performs its Court-appointed tasks. Borrower shall also provide Receiver with bank statements showing that all funds in any and all Property-related accounts were in fact transferred to the Receiver. Borrower, and its agents, employees, managers, members, directors, partners, representatives, and affiliates may not interfere with or impede the Receiver in any way, or have any contact with any of the tenants or debtors of the receivership estate, nor shall Borrower, or any of its agents, employees, managers, members, directors, partners, representatives, and affiliates enter upon the Property except with the prior consent of the Receiver; and

(c) *Computer Access Codes.* Provide the Receiver with all information necessary to operate the Property, including but not limited to all security codes, combinations, passwords and other access codes, including passwords needed to access all records and files maintained on any computer, server, or other electronic device located on the Property, or any other computers, servers, or other electronic devices on which information related to the Property is stored, together with passwords needed to access Borrower's, and its agents', employees', managers', members', directors', partners', representatives' and affiliates' e-mail accounts.

D. <u>BORROWER'S NON-INTERFERENCE</u>. Borrower, and its agents, employees, managers, members, directors, partners, representatives and affiliates, shall not:

(a) Interfere with the Receiver, directly or indirectly, in the management and operation of the Property, and the collection of the Rents and Profits derived from the Property;

(b) Collect, attempt to collect, or keep the Rents and Profits derived from the Property;

(c) Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in or dispose of the whole or any part of the Property (including the

Rents and Profits thereof), without the prior written consent of the Receiver and Plaintiff; provided, however, that nothing contained in this Order shall prohibit or restrain Plaintiff from initiating and/or completing a sale by judicial or nonjudicial foreclosure of the Property, or any portion thereof, and thereafter taking title and possession thereto; and

    (d)    Do any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Property (including the Rents and Profits thereof), or Plaintiff's interest in the Property and the Rents and Profits.'

E.    **MISCELLANEOUS.**

    (a)    *Hold Harmless.* The receivership estate of the Borrower shall indemnify and hold harmless Randall Husmann individually, and Asset Campus Housing and its agents, contractors, employees and representatives, from any claims made by persons not a party to this Order, which claims arise out of the operation of this receivership, except in a case where the Receiver has acted outside the scope of the receivership authority, or committed fraud or intentionally misrepresented the Receiver's ministerial authority as the Receiver, or acted negligently. In the event a suit is filed against the Receiver, or a related entity of the Receiver, over an issue arising out of this action, except as conditioned above, it shall be incumbent upon the receivership estate of the Borrower to reimburse the Receiver for the fees and costs of defending such action, including any appeals thereof to final resolution and award of judgments;

    (b)    *Notice to Parties.* Should it become necessary for the Receiver, or either party, to petition this Court for a clarification of the provisions of this Order, or to request other powers as the circumstances may then dictate are necessary, it is ordered that receipt of notice five (5) business days in advance of such a petition shall be sufficient notice;

    (c)    *Non-interference Provision.* It is further ordered that, except by leave of this Court, all lessors, lessees, customers, principals, investors, suppliers and/or creditors seeking to enforce any claim, right, or interest against Borrower are barred by this Order from using any "self-help" or doing anything whatsoever to interfere in any way with the Receiver in the conduct

of the receivership estate; provided, however, that nothing contained in this Order shall prohibit or restrain Plaintiff from initiating and/or completing a sale by judicial or nonjudicial foreclosure of the Property, or any portion thereof, and thereafter taking title and possession thereto; and

(d) *Termination of Receivership.* Upon reinstatement of the Loan, the foreclosure of the Property, or the dismissal of the action upon which this receivership is based, the Receiver shall turn over possession of the Property to the then owner of the Property, and Plaintiff or the Receiver shall petition the Court to discharge the Receiver and exonerate the Receiver's bond provided that the Receiver shall have first submitted the Receiver's final report and accounting and Plaintiff shall have first approved of same. Upon approval of the Receiver's final accounting and termination by the Court, all lessors, lessees, customers, principals, investors, suppliers and/or creditors who are not a named party to the action shall be barred from seeking to enforce any claim, right, or interest against the Receiver and the indemnification of the Receiver by the receivership estate shall survive the termination of this Receivership.

(e) *Non-Infringement on Affiliate Bankruptcy Cases.* Certain affiliates of the Borrower have filed or may file petitions for relief under the United States Bankruptcy Code. Nothing in this Order shall grant the Receiver the right to take any action in violation of the automatic stay under 11 U.S.C. § 362, and nothing herein shall be deemed to obligate the Borrower or any of its agents, employees, managers, members, directors, partners, representatives or affiliates to comply with any request by, or to cooperate with, the Receiver to the extent such request or cooperation contemplates actions in violation of the automatic stay under

***

***

***

11 U.S.C. § 362. Further, nothing herein grants or shall be deemed to grant the Receiver with any right, title, or interest in any property of any bankruptcy estates under 11 U.S.C. § 541.

Dated: 18th day of December, 2015.

*[signature]*

HON. STEPHEN C. VILLARREAL
(ID: f8a1b086-21d2-488c-9358-2a859a4fa6d2)