**SMITH & SMITH**
GERALD K. SMITH AND JOHN C. SMITH
LAW OFFICES, PLLC
ATTORNEYS AT LAW
6720 E. Camino Principal, Suite 203
Tucson, AZ 85715
Tel: (520) 722-1605
Fax: (520) 722-9096

Gerald K. Smith, State Bar No. 001428
Email: gerald@smithandsmithpllc.com
John C. Smith, State Bar No. 023008
Email: john@smithandsmithpllc.com
Grant L. Cartwright, State Bar No. 030780
Email: grant@smithandsmithpllc.com
Cody D. Vandewerker, State Bar No. 033385
Email: cody@smithandsmithpllc.com

*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SEASONS PARTNERS, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 4:17-bk-1746-BMW<br><br>**STIPULATED ORDER AUTHORIZING RECEIVER'S USE OF CASH COLLATERAL AND GRANTING LENDER ADEQUATE PROTECTION** |

Seasons Partners LLC (the "**Debtor**") and Somera Road – Seasons Tucson, LLC (the "**Lender**") stipulate and agree and the Court finds and concludes that:

On February 27, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in this Court.

The Lender asserts that the Debtor is the obligor under a Promissory Note dated August 24, 2006, in the original principal amount of $20,500,000 (the "**Note**"), evidencing a loan originally made by Merrill Lynch Mortgage Lending, Inc. (the "**Original Lender**") to Debtor, as the borrower, under a Loan Agreement dated as of August 24, 2006 (the "**Loan Agreement**"). The Lender asserts that the Debtor's obligations under the Note and the Loan Agreement (the "**Loan**") are further evidenced and secured by: (a) the *Deed of*

*Trust, Assignment of Leases and Rents and Security Agreement,* dated August 24, 2006, recorded in the Official Records of Pima County, Arizona on August 25, 2006, at Sequence No. 20061650282, Docket 12876, Page 1323 (the "**Deed of Trust**"), perfecting a first-priority security interest to the improved real property known as the Seasons Apartments, located at 811 East Wetmore Road, Tucson, Arizona 85719 (the "**Property**"), and in the leases and rents associated with and generated by the Property; and (b) various UCC-1 Financing Statements, including the UCC Financing Statement Amendments for Initial Financing Statements recorded in the Office of the Arizona Secretary of State, file numbers 20061660751 and 200614409539 and the original financing statements to which they refer (together with the Deed of Trust, the "**Security Documents**") (the Note, the Loan Agreement, and the Security Documents constitute the "**Loan Documents**").

Through an assignment completed on February 9, 2017, all the lender's interests in the Loan Documents were assigned to the Lender.

The Debtor previously commenced a Chapter 11 case in 2009 in this Court, Case No. 4:09-bk-24017-JMM and obtained the Court's confirmation of the Debtor's *First Amended Plan of Reorganization Dated April 23, 2010 and Modified June 9, 2010,* as modified on September 10, 2010 (the "**2010 Plan**").

The Debtor failed to timely pay the monthly installments of principal and interest (as well as tax and insurance escrows and reserves required under the Loan Documents and the 2010 Plan) for all months from and after July 2015. On November 24, 2015, the Lender's predecessor gave the Debtor formal notice of the default and accelerated all amounts due under the Loan.

On December 14, 2015, an action was commenced against the Debtor and the Property in Pima County Superior Court (the "**State Court**"), Case No. C20155598 (the "**State Court Action**"). On December 18, 2015, the Debtor consented to the State Court's

2

issuance of an *Order Appointing Receiver* (the "**Receivership Order**") which, among other things, appointed Asset Campus Housing (by and through its CFO, Randall Husmann) (the "**Receiver**"). Among other things, the Receiver was authorized and directed to take possession and control of the Property, to operate and manage the Property, to freeze all the Debtor's bank accounts and take possession of all funds in those accounts, to pay bills associated with the operation and management of the Property, to make certain tenant improvements at the Property, to enter into leases for apartments at the Property, to operate and manage the Property in accordance with an operating budget (the "**Budget**") approved by the Lender and the State Court, to market and sell the Property, and to prepare monthly summaries of revenues and disbursements on a "cash reporting basis," together with a balance sheet, income statement, cash flow statement, cash flow forecast for the remaining calendar year, budget-to-actual variance report, detailed rent roll (showing in reasonable detail for each tenant the tenant's name, the space occupied, the lease beginning and expiration date, the rent payable, the aged accounts receivable, the rent paid to date, the security deposit being held), a leasing activity report, an aged payables report, an aged receivables report, a capital expenditures report, and bank statements with monthly reconciliations (collectively, the "**Monthly Reporting**"). The Receivership Order entitles the Receiver to a receiver fee of 1.25% of gross monthly collections, a management fee of 3.75% on gross monthly collections with a $6,000 per month minimum, and a travel fee of no more than $10,000 per year, all as set forth in the Budget.

For the last 14 months, the Receiver has continued serving in accordance with the Receivership Order without interruption or interference. The Debtor filed its petition on the day before a scheduled trustee's sale pertaining to the Property.

3

The commencement of this Chapter 11 case has not displaced the Receiver or otherwise disrupted the Receiver's possession and control of the Property and its rents or the Receiver's service under the Receivership Order. In accordance with Bankruptcy Code § 543(d)(1), the Debtor agrees that it is in the best interests of its creditors and its estate for the Receiver to remain in possession and control of the Property and its rents and to continue serving under the terms of the Receivership Order.

Under the Loan Documents, the Lender asserts a perfected, first-priority security interest in, among other things, the Property, its leases and rents, furniture, fixtures, and equipment, and their respective proceeds, which includes all cash in the Receiver's possession. Accordingly, the Lender asserts that all such cash constitutes "**Cash Collateral**" under Bankruptcy Code § 363(a).

The Debtor agrees that the Receiver should stay in possession, operation, and management of the Property in accordance with the Receivership Order and use the Cash Collateral held by the Receiver or generated by the Property on the limited terms set forth in this Stipulated Order. The Debtor agrees it is in the best interests of its estate and creditors that the Cash Collateral be used in the operation and management of the Property solely on the terms and within the restrictions set forth in this Stipulated Order.

Without waiving any rights or arguments and without making any admissions, the Lender is willing to consent to the Receiver's limited use of the Cash Collateral on the terms of this Stipulated Order including the Receiver's remaining in place, the requirement that all Cash Collateral be used only within the strictures of the Budget, and the providing to the Lender of adequate protection as provided below. The Lender asserts and reserves all its rights and arguments, among them that the filing of the petition is improper, that this Court should abstain from this case, and that the stay should be modified to allow the Lender to finish its trustee sale.

4

This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

**Therefore, the Debtor and the Lender stipulate and the Court orders that:**

The Receiver is not to turn over and is not required to turn over any property of the estate under Bankruptcy Code § 543(d)(1). The Receiver is authorized and directed to carry out all the duties set forth in the Receivership Order and to continue in possession, k management, and operation of the Property in all respects in accordance with the Receivership Order and the Budget. The Receiver may continue to receive all fees and compensation coming due under the Receivership Order and set forth in the Budget. No Cash Collateral may be used to make any payment to any insider of the Debtor or to pay any prepetition claim without Court order.

As adequate protection for any diminution in the value of the Lender's prepetition collateral, including the Cash Collateral, arising from that collateral's use, and notwithstanding Bankruptcy Code § 552(a), the Lender is granted valid, binding, enforceable and perfected replacement liens (the "**Adequate Protection Liens**") in all Post-petition Collateral (defined below) and all the proceeds, products, rents, and profits of the Lender's prepetition collateral to secure any post-petition diminution in the value of the Lender's prepetition collateral and Cash Collateral, and only to the extent Cash Collateral is actually expended by the Debtor. The Adequate Protection Liens are validly perfected, binding and enforceable security interests or liens in existence in the Post-petition Collateral as of the Petition Date, or valid liens perfected (but not granted or obtained) after the Petition Date to the extent such perfection in respect of a pre-Petition Date claim is expressly permitted under the Bankruptcy Code, and the Adequate Protection Liens have the same enforceability, validity, and perfection as the lien and

5

security interests held by Lender pre-petition. The "**Post-petition Collateral**" consists of all types of currently-owned or post-petition-acquired assets of the Debtor covered by the Lender's prepetition security interests and all such assets' proceeds, products, rents, and profits, but excluding actions under Bankruptcy Code §§ 506(c), 542, 544, 545, 547, 548, 549, 550, 552(b) and 553.

The Adequate Protection Liens are valid, perfected, and enforceable as of the date of this Stipulated Order, without the need for the execution or filing of any document otherwise required to be executed or filed under applicable non-bankruptcy law.

The Receiver must continue to provide the Lender and the Debtor with the Monthly Reporting, prepared and submitted when and in the manner required under the Receivership Order and done for the month before the Petition Date.

The authority to use Cash Collateral under this Stipulated Order terminates on the earliest to occur of (a) March 31, 2017, unless that date is extended in writing by the Lender, (b) the date this Court grants any motion to abstain or dismiss the case or modify the stay, and (b) a Default (defined below).

Each of the following constitutes a "**Default**" under this Stipulated Order:

The dismissal of this case or conversion of this case to chapter 7; or

The Debtor's or the Receiver's failure to comply with any of its material obligations contained in this Stipulated Order; or

Except as permitted in this Stipulated Order, the entry of any order of the Bankruptcy Court granting a super-priority claim or lien *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens; or

The entry of an order in this case appointing any examiner with expanded powers or a trustee; or

The resignation or removal of the Receiver without a contemporaneous or immediate replacement reasonably acceptable to the Lender and the Debtor; or

The entry of an order granting relief from the automatic stay; or

6

The Debtor attempts to sell any of its assets subject to the Lender's security interest without the Lender's written consent and without granting the Lender a right to credit bid under Bankruptcy Code § 363(k).

On the occurrence and during the continuance of a Default or when the authorization to use Cash Collateral terminates, the Receiver must immediately cease using Cash Collateral (unless the Lender otherwise permits in writing), and the Receiver must segregate and hold all Cash Collateral for the Lender's benefit, subject to further order of the Bankruptcy Court or the State Court, as applicable.

Lender does not consent to the surcharge of any of its prepetition or post-petition collateral for the payment of any costs of administration of this estate under Bankruptcy Code § 506(c) or otherwise. Lender has signed below for the limited purposes of this Stipulated Order only and expressly reserves, without waiver, any right and argument, among others, that this Court should abstain from this case, should dismiss this case, should modify the stay, and that the case was improperly filed.

**AGREED AS TO FORM AND CONTENT:**

| SEASONS PARTNERS LLC | SOMERA ROAD – SEASONS TUCSON, LLC |
|---|---|
| */s/Grant L. Cartwright* | /s/ Jordan A. Kroop (with permission) |
| John C. Smith | Jordan A. Kroop |
| Grant Cartwright | Bradley A. Cosman |
| Cody D. Vandewerker | PERKINS COIE LLP |
| Gerald K. Smith | Counsel for Lender |
| SMITH & SMITH, PLLC | |
| Proposed Counsel for Debtor-In-Possession | |

**SIGNED AND DATED ABOVE**

7