1  Cathy L. Reece (No. 005932)
   Anthony W. Austin (No. 025351)
2  Fennemore Craig, P.C.
   2394 East Camelback, Suite 600
3  Phoenix, AZ 85016-3429
   Telephone: (602) 916-5000
4  Email: creece@fclaw.com
   Email: aaustin@fclaw.com
5
6  *Attorneys for Creditor Somera Road – Seasons
   Tucson, LLC*

7         **IN THE UNITED STATES BANKRUPTCY COURT**

8              **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 9    In re | Chapter 11 |
| 10   SEASONS PARTNERS, LLC, | Case No. 4:17-bk-01746-BMW |
| 11        Debtor. | **EMERGENCY MOTION TO DISMISS, ABSTAIN OR SUSPEND THE CASE** |
| 12 | Hearing Date : TBD |
| 13 | Hearing Time: TBD |

14

15      Somera Road – Seasons Tucson, LLC, the assignee of MLCFC 2006-3-811 E.

16  WETMORE RD LLC, ("Lender"), the largest creditor of this single asset real estate

17  debtor Seasons Partners, LLC ("Seasons Partners" or the "Debtor"), files the following

18  Emergency Motion to Dismiss, Abstain or Suspend the above referenced Case ("Case")

19  pursuant to Sections 305(b), 1112(b) and 105(a) of the Bankruptcy Code. For the

20  foregoing reasons and more, the Court should dismiss the Case or abstain from hearing

21  the Case or suspend the Case under Section 305(a), 1112(b) or 105(a) of the Bankruptcy

22  Code, as in the best interests of the creditors and the debtor.

23                    <u>**Executive Summary**</u>

24      The State Court Receiver has been the de facto owner and operator of the Debtor

25  for the past fifteen (15) months. During this time, the Receiver has operated, managed

26  and controlled the Property and the student housing business. It has made all decisions

Fennemore Craig, P.C.     12663543.1
Phoenix

concerning operations and the business during this period. The Debtor, in contrast, after defaulting on the loan in July 2015 and consenting to the Receivership, has not been involved in the operations of the business and has effectively been an absentee owner.

Financially, the assets of the Debtor are utterly insufficient to support a chapter 11 proceeding, let alone a confirmable plan. In 2016, the Lender was forced to advance $265,000 to the Receiver to cover operating expenses. Even with this advance, the Receiver finished 2016 with a meager $501 in operating cash. No debt service payments have been made to Lender since July 2015, nor are there funds from the operations to make any debt service or adequate protection payments to Lender.

The Authorization Resolution of Debtor demonstrates that there has been significant turmoil among the Debtor's managers and members. The Debtor as the absentee owner is not prepared to operate the business or restructure the debt in this Case. Even if they were prepared this case is arguably already administratively insolvent as there are no funds to pay chapter 11 administrative professional fees or expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Factual Background

#### A.    Debtor's Pre-Petition Operations

The core of Debtor's former business is the operation of student housing in Tucson, Arizona. Debtor owns real property and improvements at 811 East Wetmore Road, Tucson, Arizona 85719 that it holds out as student housing for local college students (the "Property").

Seasons Partners previously filed a chapter 11 proceeding in Case No. 4:09-bk-24017-JMM and confirmed its First Amended Plan of Reorganization Dated April 23, 2010 and Modified June 9, 2010 (the "2010 Plan") as modified from time to time, on September 10, 2010.

FENNEMORE CRAIG, P.C.

PHOENIX

12663543.1

Debtor's assets are fully encumbered by Lender's Deed of Trust, Assignment of Rents and Leases, UCC Financing Statement and other security documents in favor of Lender. There are no other creditors with a lien on the Property.

**B.    Receivership Proceeding and Financial Status of the Receivership Estate**

In July 2015, Seasons Partners defaulted under the loan and under the 2010 Plan. On December 14, 2015, Lender filed an action with the Superior Court for the County of Pima to have a receiver appointed for Seasons Partners. Seasons Partners through its principals consented to the appointment of a Receiver, the entry of the Receivership Order and filed a declaration. On December 18, 2015, the state court entered an order (the "Receivership Order") appointing Asset Campus Housing (by and through its CFO, Randall Husmann) as receiver for the Lender (the "Receiver"). The Receivership Order grants the Receiver the broad powers to manage, sell and operate the business and assets. A copy of the Receivership Order is attached hereto as **Exhibit A**. A copy of the Declaration of Consent to the Receivership is attached hereto as **Exhibit B.**

The Receiver has operated, managed and controlled the business and Property for 15 months. As detailed in the Declaration of Randall Husmann, attached hereto as **Exhibit C**, the Debtor has had virtually no contact with the Receiver regarding the operations and status of the Property or the business operations. It has been an absentee owner.

The Receivership Order granted expansive powers to the Receiver. The Receiver is empowered to make all operational decisions of the business and the Property. It hires and fires employees, enters into leases and settlements with tenants, and it incurs debt to buy furniture and undertake capital expenditures, it enters into contracts and arrangements concerning the business. The Receiver is even authorized to market and sell the Property without Debtor approval. The Debtor's absentee nature for the past 15 months has forced

the Receiver to become the de facto owner. For all intents and purposes, all duties and responsibilities for the business were granted to Receiver in the Receivership Order and Debtor has surrendered or abrogated its responsibilities.

The operations for the Property do not generate sufficient income to pay all operating expenses, to pay any debt service to Lender, to pay chapter 11 administrative expenses or to fund needed capital expenditures. In 2016, Lender had to advance $265,000 to the Receiver to address needed expenses. Even with this advance in 2016, the Receiver ended the year with only $501 cash and had paid no debt service to the Lender. Based on the Receiver's March 2017 Budget, it appears that March 2017 will have an operating loss. Notably, real property taxes for the second half of 2016 for the Property are due on March 31, 2017 in the amount of $71,400, pre-petition and post petition payroll will have to be paid and the Receiver needs to expend $76,500 in March for new furniture for the Property, in addition to the other operating expenses such as utilities, maintenance and repairs, lease payments for the buses, etc. There are no funds for the Lender's debt service or for any chapter 11 professional fees and administrative expenses. The March 2017 Budget is hereto attached as **Exhibit D.**

### C. The Debtor filed on the Eve of Foreclosure Proceedings

A Deed of Trust sale was scheduled for February 28, 2017. Debtor filed this bankruptcy on February 27, 2017, to prevent the foreclosure and loss of the Property. As part of its bankruptcy filing, Debtor included a four page authorizing resolution. In that authorization, Debtor lays out the turmoil that has occurred with respect to the managers and members of the Debtor. The Resolution is attached to the Application to Employ Gerald K. Smith & John C. Smith Law Offices, PLLC (Docket No. 4-2) and a copy is attached hereto as **Exhibit E.**

FENNEMORE CRAIG, P.C.
PHOENIX

12663543.1

II.     **Legal Argument**

    A.     **Suspension Or Abstention Under Section 305(a) Is Warranted.**

Section 305(a) permits a bankruptcy court to decline jurisdiction over a bankruptcy case, by abstaining or suspending the case. *See 2-305 Collier on Bankruptcy* ¶ 305.01 (online edition). Section 305(a) provides that abstention or suspension is warranted if "it is in the interest of the creditors and the debtor." This provision grants significant discretion to the court to decline jurisdiction under the particular facts and circumstances of the case.

In determining whether relief under Section 305(a) is appropriate, courts have considered a number of factors, including: (1) who filed the bankruptcy petition; (2) the availability of another forum to resolve the disputes; (3) the expense of the federal proceedings in comparison with the proceedings in another forum; (4) the economy and efficiency of having the bankruptcy court handle the matter; and (5) the possible prejudice to parties of remaining in bankruptcy court." *See In re Greene*, 1999 WL 689711 at *4-5 (E.D. Pa. Sept. 27, 1999) (cited by *2-305 Collier on Bankruptcy* ¶ 305.02) (affirming suspension of proceedings in bankruptcy court). The primary focus of the court is whether dismissal serves the best interests of both the debtor and the creditors. *See In re O'Neil Village Personal Care Corp.*, 88 B.R. 76, 79 (Bankr. W.D. Pa. 1988) (abstaining under Section 305(a) where a receiver had been competently supervising the operation and management of the debtor, and a bankruptcy trustee would most likely have to be appointed).

This Property and business have been in Receivership for the last 15 months. When, as in the present case, there is an existing mechanism in place to administer the debtor's assets and claims, abstention is appropriate. *See O'Neil Village*, 88 B.R. at 80; *In re Mazzocone*, 183 B.R. 402, 421 (Bankr. E.D. Pa. 1995). More specifically, if the parties have invested substantial time and effort in a receivership proceeding, bankruptcy

1    proceedings may be duplicative of the receiver's pre-petition efforts and progress. *O'Neil*

2    *Village*, 88 B.R. at 80; *In re 801 South Wells St. L.P.*, 192 B.R. 718, 724 (Bankr. N.D. Ill.

3    1996). In the *O'Neil Village* case, the court found debtor's principals had engaged in self-

4    dealing and fraud, and that it could not return management of the debtor to them. It

5    reasoned that if it retained jurisdiction over the bankruptcy court, it would have to appoint

6    a trustee. Because a trustee in that case would only duplicate the receiver's efforts, the

7    court decided to abstain.

8        Debtor's last minute filing to prevent the foreclosure does not alter the facts that

9    the creditors are better served by allowing the Receiver to remain in control and ultimately

10   allow the receivership to be completed. As detailed below, a chapter 11 proceeding adds

11   unnecessary cost, is unlikely to result in a confirmable plan, and only serves to harm the

12   creditors.

13       In the present case, the Receiver has been managing, operating and in control of the

14   business for the past 15 months. During that time, the Receiver has made all the business

15   decisions of the business. It has worked with the retained employees, and has dealt with

16   the regular expenses of both operating and maintaining the business. It has been funding

17   payroll, benefits, utilities, insurance, and equipment maintenance, among other expenses,

18   and has kept current on the business operations, aside from paying any debt service to the

19   Lender. However, the Receiver was forced to seek funding of $265,000 in 2016 from the

20   Lender for the operations.

21       During the past 15 months, the principals of the Debtor have had zero contact with

22   the Receiver regarding the operations of the business or the Property. Further, since filing

23   of the bankruptcy, the principals have not made contact with the Receiver to address

24   payroll, operations, or other important items. As reflected in the Authorization Resolution

25   attached as Exhibit E, the managers and members of the Debtor have been in turmoil and

26   changed hands numerous time.

1    The creditors and debtor are both better served by the receivership process and
2    foreclosure than by a Chapter 11 proceeding.  Receivership expenses (the equivalent of
3    administrative claims in the bankruptcy case) will be paid out of the revenues based on
4    budgets consented to by Lender.  Real property taxes (which are approximately $71,400)
5    will be paid.  Providers of electricity and water will be paid.  Employees will be paid.  The
6    largest secured creditor, Lender, will not be paid in full, but its return will be maximized
7    by a swift and certain foreclosure.

8    The Debtor is also better served by the receivership process.  The Debtor's
9    operations do not fully pay for the necessary cost of insuring, maintaining, and securing
10   the Debtor's property.  Only because of the Receiver's efforts and the Lender's voluntary
11   advances of funds has the Property and business been preserved.  In a Chapter 11 case,
12   Lender has no obligation to lend funds. The Debtor has no equity and the Case is
13   insolvent and with each day will become more administratively insolvent.

14   All of the Debtor's assets including cash collateral are fully  encumbered by the
15   lien of Lender. Given the  operating deficits, it cannot adequately protect Lender's
16   interests or service any of the debt owed to Lender.

17   This Case is an appropriate one for abstention or dismissal under Section 305(a).
18   The existing Receivership proceeding would result in an preservation of the Property until
19   the foreclosure and transfer to Lender can occur.  The Receivership process will allow the
20   Receiver access to funds to repair and maintain the Property, continue to lease the units, to
21   pay real property taxes, employee wages and benefits and other Receivership expenses,
22   until the foreclosure takes place.

23   Nothing more can be accomplished in a Chapter 11 case by an absentee owner who
24   filed this case to save a Property with which it has had no contact.  Debtor has filed a
25   barebones petition and has not even filed a list of creditors or schedules, let alone a vision
26   for how a Chapter 11 case would improve the dire circumstances the Property finds itself

FENNEMORE CRAIG, P.C.
PHOENIX

12663543.1

1  in. It also has not filed any first day motions to pay pre-petition payroll and taxes or
2  utilities, etc. Over a week into the chapter 11 case, the Debtor remains an absentee owner
3  and has taken no ownership of the Case or the issues that exist.

4      <u>All</u> of the parties will be better served by proceeding in the state court receivership
5  action and, therefore, abstention or suspension is appropriate.

6              **B.    Dismissal Of This Case Under Section 1112(b) Is Warranted.**

7      If the Court does not agree that the Debtor would be better off in the Receivership
8  proceeding, "cause" exists for dismissing the Case under Section 1112(b) of the
9  Bankruptcy Code. Chapter 11 is designed to preserve going concerns and maximize the
10 value of property available to satisfy creditors. *Bank of America Nat'l Trust & Sav. Ass'n*
11 *v. 203 N. LaSalle Street P'ship*, 526 U.S. 434, 435 (1999). In cases in which the Chapter
12 11 process cannot serve those objectives, dismissal is appropriate. *See Carolin Corp. v.*
13 *Miller*, 886 F.2d 693, 698 (4th Cir. 1989) ("[I]f there is not a potentially viable business in
14 place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison*
15 *d'être*"); *In re Johnston*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992) (dismissal should be
16 ordered at the outset if it appears that the debtor has no prospects of reorganizing).

17     Section 1112(b)(4) of the Bankruptcy Code lists non-exclusive factors that
18 constitute "cause" for dismissal, the first of which is: " (A) substantial or continuing loss
19 to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."
20 The Debtor is operationally insolvent, has little to no cash, does not have the wherewithal
21 to protect and preserve the Property, and does not have the support of its largest creditor
22 for a plan of reorganization.

23     In addition, this case meets a number of the factors set forth in case law in this
24 jurisdiction constituting "cause" for dismissal: (1) the Debtor's business cannot pay for
25 the minimum expenditures necessary to preserve the Property; (2) the Debtor has
26 insufficient cash flow to pay chapter 11 professionals or Trustee's fees; (3) reorganization

1   is futile; (4) the petition was filed minutes before the Lender was to conduct its deed of

2   trust sale of the Property; and (5) the Debtor has no funds to pay any debt service to the

3   Lender. *See, e.g., In re St. Paul Self Storage L.P.*, 185 B.R. 580, 582-83 (B.A.P. 9th Cir.

4   1995); *In re Stolrow's Inc.*, 84 B.R. 167 (B.A.P. 9th Cir. 1988).

5   These factors, coupled with the existence of a Receiver for 15 months and an

6   absentee owner, warrant immediate dismissal of this Case.

7   **III.   Conclusion**

8   As detailed above, this proceeding by an absentee owner is a desperate move to

9   save assets it has not had contact with in 15 months. The Receiver has managed and

10  operated and has been in control of the business and the Property for 15 months. Finally,

11  this case presents no serious opportunity for reorganization and therefore, this Court

12  should abstain and/or dismiss the case to allow the Receivership to run its course and

13  Lender to complete the foreclosure proceedings.

14  DATED this 9th day of March, 2017.

15  FENNEMORE CRAIG, P.C.

16  

17  By  */s/ Anthony W. Austin*
        Cathy L. Reece
        Anthony W. Austin
18      Attorneys for Lender

19  COPY of the foregoing emailed
    And/or mailed this 9th day of March, 2017 to:

20  
    U.S. Trustee
21  Office of the U.S. Trustee
    ustpregion14.px.ecf@usdoj.gov

22  
    John C. Smith
23  Grant Cartwright
    Gerald K. Smith & John C. Smith Law Office
24  6720 E. Camino Principal, Ste. 203
    Tucson, AZ 85715
25  john@smithandsmithpllc.com
    grant@smithandsmithpllc.com
26  *Attorneys for Debtor*

1      Renee Sandler Shamblin
2      Office of the US Trustee
          230 N. First Avenue, Ste. 204
3      Phoenix, AZ 85003-1706
          Renee.s.shamblin@usdoj.gov
4

5

6      */s/ Gidget Kelsey-Bacon*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT

# A

Brian C. Lake (#020543)
Kendra L. Kisling (#030959)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
BLake@perkinscoie.com
KKisling@perkinscoie.com
docketphx@perkinscoie.com

*Attorneys for Plaintiff*

ARIZONA SUPERIOR COURT

PIMA COUNTY

| | |
|---|---|
| MLCFC 2006-3 – 811 E. WETMORE RD LLC, a Delaware limited liability company, | No. C20155598 |
| Plaintiff, | |
| v. | **ORDER APPOINTING RECEIVER** |
| SEASONS PARTNERS LLC, an Arizona limited liability company, JOHN AND JANE DOES I–X; and WHITE CORPORATIONS I–X, | |
| Defendants. | |

The Court, having considered the pleadings on file herein, and for good cause being shown,

**IT IS HEREBY ORDERED:**

A. <u>APPOINTMENT OF RECEIVER</u>. Asset Campus Housing (ACH), whose business address is 675 Bering Dr., Suite 200, Houston, TX 77057, by and through its CFO, Randall Husmann, is hereby appointed receiver (the "Receiver") in this action solely for and on behalf of Defendant Seasons Partners, LLC (the "Borrower"), with such appointment to be

effective immediately, conditioned that the Receiver shall faithfully discharge its duties in this action and obey the orders of this Court and provided that the Receiver shall forthwith file:

(i)        The Certificate of Appointment of Receiver;

(ii)      A bond in the sum of $ 224,550.00; and

(iii)     An Oath of Receiver as set forth in Ariz. R. Civ. P. 66(b)(2).

B.     <u>DUTIES OF RECEIVER</u>. The Receiver is granted all of the following powers and duties:

(a)     *Possession.* The power to take immediate and exclusive possession of the Property of the Borrower—The Seasons Apartments, located at 811 East Wetmore Road, Tucson, Arizona 85719 ("Property of the Borrower"), as is more particularly described in the Verified Complaint ("Complaint") (including, without limitation, all land, buildings, structures, service contracts, leases, records, files, policies, equipment, chattels, and fixtures related thereto), plus all the rents, prepaid rents, security deposits, storage fees, parking fees, lease payments, royalties, issues, profits, revenue and income thereof (collectively, the "Rents and Profits");

(b)     *Operation and Management.* The power to operate and manage the Property of the Borrower and the ongoing business on the Property (including, without limitation, the power to eject tenants or repossess personal property, as provided by law, for breaches of the conditions of leases or other agreements, and maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent), and to safeguard the Property making such expenditures and repairs as are needed to keep the Property in good and rentable condition, and to pay the costs of such expenditures and repairs from funds of the receivership estate to the extent there are funds available, but only such costs as arise out of the Receiver's operation of the Property subsequent to the Receiver's appointment and not any bills of any prior or current owners or operators unless the payment of such sums is essential to the continued operation of the Property as determined by the Receiver in its sole discretion; *provided, however*, that in exercising its operation and management duties, the Receiver is not permitted to change the name

-2-

No. C20155598

of the Property from "Seasons" or "The Seasons" without first obtaining the prior written consent of Plaintiff, which consent may be withheld in Plaintiff's sole discretion;

(c)     *Receiver's Agents*.  The power to appoint or hire such agents, independent contractors, and employees as may be needed to assist the Receiver in managing the Property of the Borrower, including a property management company, if appropriate, provided the amount of compensation paid to such agents or firm must be comparable to that charged by similar companies for similar services;

(d)     *Legal Counsel*.  The power to hire independent legal counsel, if needed and as determined by the Receiver in its sole discretion, to, among other things, defend or commence any lawsuit with regard to the Property of the Borrower, and to pay such counsel for their services at rates the Receiver deems appropriate for the services provided;

(e)     *Reimbursement of Receiver*.  The power to reimburse the Receiver for its out-of-pocket expenditures as well as any support staff as the Receiver may provide to the receivership estate, including any employees who directly assist the Receiver in carrying out its duties;

(f)     *Existing Bank Accounts*.  The power to issue demands for the freezing and turnover of funds upon any financial institution which the Receiver has determined is a depository of funds belonging to, or arising from, the Borrower, including accounts that Borrower's property manager may have established on its behalf, whether such accounts be titled in the name of the Borrower or not, and to indemnify the institution upon whom such demand is made on behalf of the receivership estate if the Receiver deems such indemnification necessary; provided that the Receiver shall have no power to issue any demands affecting the assets of Variant Holding Company, LLC, a debtor and debtor in possession in a pending chapter 11 case before the United States Bankruptcy Court for the District of Delaware, or its affiliates and subsidiaries, other than the Borrower;

(g)     *Utility Services and Deposits*.  The power to issue demands, in the name of the receivership estate, upon public utilities which the Receiver determines provide services to the

-3-

Property of the Borrower and to transfer such services, together with any deposits held by the utility, to the exclusive control of the Receiver;

(h)     *Post Office Box*.  The power to issue demands in the name of the receivership estate upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by Borrower and/or its agents, successors, assigns, and managing members for the receipt of rent, income, and other mail related to the Property of the Borrower;

(i)     *Sources of Revenue*.  The power to identify all revenue sources of the Borrower or the Property, be they rent, fees, royalties, or otherwise described, and make demand upon all payees, lessees, tenants or any other persons or entities, to make remittances of future sums and past due balances solely to the Receiver;

(j)     *Demand for Deposits*.  The power to demand deposits from available leases and other records, compute the amount of deposits collected by Borrower and/or its agents, successors, assigns, and managing members (to the extent those members personally collected such deposits related to the Property of the Borrower) from tenants for security, cleaning, pets, or any other purposes, and demand the immediate surrender to the Receiver of such deposits by Borrower and/or its agents, successors, assigns, and managing members who collected them related to the Property of the Borrower, and to take appropriate action to enforce the turnover of such deposits;

(k)     *Pre-Receivership Bills*.  The power to pay only current operating expenses associated with the Property incurred by the Receiver subsequent to its appointment, including without limitation, the Receiver's fees and administrative expenses, with the limitation that the Receiver may not use funds of the receivership estate to pay any bills for goods or services contracted for or provided in connection with the Property, or to Borrower and/or its agents, successors, assigns, and managing members related to the Property of the Borrower, prior to the date of the Order unless such payment is reasonably necessary or beneficial to enable the Receiver to continue to operate the Property as determined by the Receiver in its sole discretion;

-4-

No. C20155598

(l)     *Insurance.* The power to determine whether the Property is adequately insured, and if not, to order and pay for such insurance from available funds; provided that such insurance shall, at a minimum, comply with the Loan Documents;

(m)     *Right to Lease.* The power to enter into leases for all or part of the Property, without the need to seek prior approval from the Court, provided that (i) the Receiver obtains any necessary required approvals as set forth in the Loan Documents; and (ii) any lease is upon terms and conditions which are comparable to the terms and conditions upon which similar properties are offered for rent in the marketplace as determined by the Receiver in its sole discretion, subject to Plaintiff's approval if required pursuant to the Loan Documents;

(n)     *Tenant Improvements.* The power to expend sums up to $5,000 from the receivership estate which, in the Receiver's opinion and subject to its approval, are required to make the Property rentable;

(o)     *Advance by Plaintiff.* The power to borrow from Plaintiff, with or without the necessity of issuing Receiver's Certificates, such funds as may be required by the Receiver to cover operating expenses of the receivership, including but not limited to the Receiver's fees and costs, as determined by the Receiver in its sole discretion, provided that Plaintiff consents to making such advances. Plaintiff may add the amount of such advances to the Loan, and shall be entitled to earn interest on such advances at the rate then payable on the Loan;

(p)     *Request Police Assistance.* The power to request assistance of law enforcement officials when taking possession of the Property, or at any other time during the term of the receivership, if in the opinion of the Receiver such assistance is necessary;

(q)     *Operating Budget.* Within 30 days from the date of appointment, the Receiver shall prepare, if appropriate, projected annualized operating budgets for the Property, based upon operating data obtained from Borrower, if available, and other sources where the use of a budget is appropriate;

(r)     *Distribution of Funds.* If the Receiver determines that the receivership estate possesses funds in excess of that needed to pay all of its operating costs, including property

-5-

taxes and Receiver's fees, and if there are no other outstanding bills or obligations, then the Receiver may, at its discretion, make distributions to Plaintiff, with such sums to be applied by Plaintiff in the manner provided under the Loan Documents, or as otherwise determined by this Court, with the understanding and agreement of Borrower that any such distribution shall not affect the underlying foreclosure action or modify Borrower's performance dates or obligations in any way;

(s) *Monthly Reporting.* The Receiver shall provide a computerized monthly summary of revenues and disbursements on a "cash reporting basis" as that term is commonly understood within the accounting profession, together with the following information to the extent not contained in the foregoing summary: a balance sheet; a statement of income and expenses; a statement of cash flows; a cash flow forecast addressing the remaining calendar year; a budget versus actual variance report; a detailed rent roll showing the name of each tenant, and for each tenant, the space occupied, the lease beginning and expiration date, the rent payable, the aged accounts receivable, the rent paid to date, the security deposit being held for said tenant, each in reasonable detail; a leasing activity report; an aged payables report; an aged receivables report; a capital expenditures report; bank statements with monthly reconciliations, within a reasonable time period, but in no event later than the 15th day of the following month, to the litigants and/or any other interested party who requests, and is entitled to, such a report. Within 45 days of the conclusion of the receivership, the Receiver shall file with the Court a final summary accounting for the full term of the receivership;

(t) *Payment of Receiver.* The Receiver shall be entitled to: (1) a receiver fee of 1.25% of gross monthly collections; (2) a management fee of 3.75% on gross monthly collections with a $6,000 monthly minimum; and (3) a travel fee limited to $10,000 per year per a budget approved by Plaintiff and the Court;

(u) *Marketing and Sale of Property.* Upon Plaintiff's prior approval, the Receiver is authorized to place the Property for sale on the market, retain any marketing analysts, advertisers, or brokers (with the retention of any broker subject to Plaintiff's approval), and

-6-

No. C20155598

undertake any and all other duties associated with marketing and sale of the Property, including executing documents necessary for consummation of a sale, with such sale being subject to Plaintiff and Court approval;

(v)     *Disbursements.*  Notwithstanding anything to the contrary in the Court's order, the Receiver shall not expend or disburse more than $5,000.00 at any one time or make any material modification or capital improvement to the Property, without the approval of Plaintiff, and nothing in the Court's order shall obligate Plaintiff to lend or disburse any funds or amounts to the Receiver; and

(w)     *Access.*  The Receiver shall allow Plaintiff, its counsel, appraisers, and other independent third-party consultants engaged by Plaintiff or its counsel access to the Property at all reasonable times to inspect the Property and all books and records, and to cooperate with Plaintiff, its counsel, appraisers and other independent third-party consultants to evaluate the Property.

C.     BORROWER'S DUTIES.   Borrower, and its agents, employees, managers, members, directors, partners, representatives and affiliates and through its the Property Manager—the person or firm charged with operating the Property of the Borrower, shall:

(a)     *Cooperation.*  To the extent feasible and without incurring any out-of-pocket expense, cooperate with the Receiver and disclose:  all information and all records relevant to the Property and its operation, including all names of all vendors and suppliers and all bills, service contracts, warranty information, and contracts with vendors in effect with respect to the Property, and all communications and correspondence pertinent thereto for all contractors and/or vendors who have or currently provide services at the Property; a current list of the occupants of the Property, all original leases along with tenant files, histories, tenant ledgers for each occupant, and all communications and correspondence pertinent thereto; any and all files relating to contracts, bids or other materials relating to any contractor work performed at the Property; any and all payroll records, employee files, applications and other materials relevant to those persons employed at the Property for the two years preceding the date of this Order and for

Case 4:17-bk-01746-BMW    Doc 24    Filed 03/09/17    Entered 03/09/17 09:13:51    Desc
Main Document      Page 18 of 39

previous years at the Receiver's reasonable request; any and all insurance policies covering the Property, and all communications and correspondence pertinent thereto; any and all records related to pending or current litigation related to the Property; information concerning all bank accounts, and tax identification numbers. Borrower shall turn over to the Receiver any material relevant and necessary in the opinion of the Receiver to the fulfillment of the tasks and objectives set forth in this Order. Borrower shall prepare and provide to the Receiver and Plaintiff an itemization as to the Property of all accounts payable and receivable, all rents collected, and all management fees paid or payable. All tenants of the Property must pay their rent to the Receiver; and Borrower will cooperate with the Receiver to assure as such, including sending proper written notice to all tenants, in a form approved by and acceptable to the Receiver, directing that all payments of rents or other monies due shall be made to the Receiver. Any other persons or entities owing sums to Borrower with respect to the Property which would otherwise be payable to Borrower must likewise pay such sums to the Receiver, including any portion thereof which represents payment for past due rents or services, and Borrower will cooperate with the Receiver to assure as such, including sending proper written notice to all persons or entities owing sums to Borrower with respect to the Property, in a form approved by and acceptable to the Receiver, directing that all payments of such sums shall be made to the Receiver. Any reasonable, actual, out-of-pocket expenses incurred by the Property Manager to comply with the terms of this paragraph shall be reimbursed by the Receiver to the Property Manager and shall be expenses of the receivership;

        (b)    *Surrender of Assets*. Turn over to the Receiver, and instruct its agents, employees, managers, members, directors, partners, representatives and affiliates to turn over to the Receiver, all profits, rents, pre-paid rents, security deposits, cash collateral (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, including, but not limited to, amounts that Borrower may have deposited with utility companies, all rights to unearned insurance premiums or claim proceeds, or pre-payments of any kind, and all other cash and cash equivalents), other sums relating to the use, enjoyment,

-8-

No. C20155598

possession, improvement or occupancy of all or any part of the Property, and other assets of the receivership estate; all keys; contracts; all loans (if any) between Borrower and any affiliated entities and/or between Borrower and any third parties (excluding Plaintiff), together with any communications or correspondence files relating thereto; all receivables; and all other things of value; and to cooperate with the Receiver in all ways reasonable as the Receiver performs its Court-appointed tasks. Borrower shall also provide Receiver with bank statements showing that all funds in any and all Property-related accounts were in fact transferred to the Receiver. Borrower, and its agents, employees, managers, members, directors, partners, representatives, and affiliates may not interfere with or impede the Receiver in any way, or have any contact with any of the tenants or debtors of the receivership estate, nor shall Borrower, or any of its agents, employees, managers, members, directors, partners, representatives, and affiliates enter upon the Property except with the prior consent of the Receiver; and

(c) *Computer Access Codes.* Provide the Receiver with all information necessary to operate the Property, including but not limited to all security codes, combinations, passwords and other access codes, including passwords needed to access all records and files maintained on any computer, server, or other electronic device located on the Property, or any other computers, servers, or other electronic devices on which information related to the Property is stored, together with passwords needed to access Borrower's, and its agents', employees', managers', members', directors', partners', representatives' and affiliates' e-mail accounts.

D. <u>BORROWER'S NON-INTERFERENCE</u>. Borrower, and its agents, employees, managers, members, directors, partners, representatives and affiliates, shall not:

(a) Interfere with the Receiver, directly or indirectly, in the management and operation of the Property, and the collection of the Rents and Profits derived from the Property;

(b) Collect, attempt to collect, or keep the Rents and Profits derived from the Property;

(c) Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in or dispose of the whole or any part of the Property (including the

No. C20155598

Rents and Profits thereof), without the prior written consent of the Receiver and Plaintiff; provided, however, that nothing contained in this Order shall prohibit or restrain Plaintiff from initiating and/or completing a sale by judicial or nonjudicial foreclosure of the Property, or any portion thereof, and thereafter taking title and possession thereto; and

(d)     Do any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Property (including the Rents and Profits thereof), or Plaintiff's interest in the Property and the Rents and Profits.'

E.     MISCELLANEOUS.

(a)     *Hold Harmless.* The receivership estate of the Borrower shall indemnify and hold harmless Randall Husmann individually, and Asset Campus Housing and its agents, contractors, employees and representatives, from any claims made by persons not a party to this Order, which claims arise out of the operation of this receivership, except in a case where the Receiver has acted outside the scope of the receivership authority, or committed fraud or intentionally misrepresented the Receiver's ministerial authority as the Receiver, or acted negligently. In the event a suit is filed against the Receiver, or a related entity of the Receiver, over an issue arising out of this action, except as conditioned above, it shall be incumbent upon the receivership estate of the Borrower to reimburse the Receiver for the fees and costs of defending such action, including any appeals thereof to final resolution and award of judgments;

(b)     *Notice to Parties.* Should it become necessary for the Receiver, or either party, to petition this Court for a clarification of the provisions of this Order, or to request other powers as the circumstances may then dictate are necessary, it is ordered that receipt of notice five (5) business days in advance of such a petition shall be sufficient notice;

(c)     *Non-interference Provision.* It is further ordered that, except by leave of this Court, all lessors, lessees, customers, principals, investors, suppliers and/or creditors seeking to enforce any claim, right, or interest against Borrower are barred by this Order from using any "self-help" or doing anything whatsoever to interfere in any way with the Receiver in the conduct

No. C20155598

of the receivership estate; provided, however, that nothing contained in this Order shall prohibit or restrain Plaintiff from initiating and/or completing a sale by judicial or nonjudicial foreclosure of the Property, or any portion thereof, and thereafter taking title and possession thereto; and

(d) *Termination of Receivership*. Upon reinstatement of the Loan, the foreclosure of the Property, or the dismissal of the action upon which this receivership is based, the Receiver shall turn over possession of the Property to the then owner of the Property, and Plaintiff or the Receiver shall petition the Court to discharge the Receiver and exonerate the Receiver's bond provided that the Receiver shall have first submitted the Receiver's final report and accounting and Plaintiff shall have first approved of same. Upon approval of the Receiver's final accounting and termination by the Court, all lessors, lessees, customers, principals, investors, suppliers and/or creditors who are not a named party to the action shall be barred from seeking to enforce any claim, right, or interest against the Receiver and the indemnification of the Receiver by the receivership estate shall survive the termination of this Receivership.

(e) *Non-Infringement on Affiliate Bankruptcy Cases*. Certain affiliates of the Borrower have filed or may file petitions for relief under the United States Bankruptcy Code. Nothing in this Order shall grant the Receiver the right to take any action in violation of the automatic stay under 11 U.S.C. § 362, and nothing herein shall be deemed to obligate the Borrower or any of its agents, employees, managers, members, directors, partners, representatives or affiliates to comply with any request by, or to cooperate with, the Receiver to the extent such request or cooperation contemplates actions in violation of the automatic stay under

\* \* \*

\* \* \*

\* \* \*

No. C20155598

11 U.S.C. § 362. Further, nothing herein grants or shall be deemed to grant the Receiver with any right, title, or interest in any property of any bankruptcy estates under 11 U.S.C. § 541.

Dated: 18th day of December, 2015.

HON. STEPHEN C. VILLARREAL
(ID: f8a1b086-21d2-488c-9358-2a859a4fa6d2)

No. C20155598

# EXHIBIT

# B

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
12/17/2015 4:09:49 PM
BY: ALAN WALKER
DEPUTY

1  Brian C. Lake (#020543)
   Kendra L. Kisling (#030959)
2  **PERKINS COIE LLP**
3  2901 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012-2788
4  Telephone: 602.351.8000
   Facsimile: 602.648.7000
5  BLake@perkinscoie.com
   KKisling@perkinscoie.com
6  docketphx@perkinscoie.com
7
   *Attorneys for Plaintiff*
8
                    ARIZONA SUPERIOR COURT
9
                         PIMA COUNTY
10
11  | MLCFC 2006-3 – 811 E. WETMORE RD LLC, a | No. C20155598 |

12  Delaware limited liability company,

13                Plaintiff,                     **UNOPPOSED MOTION FOR
                                                 APPOINTMENT OF RECEIVER**
14       v.

15  SEASONS PARTNERS LLC, an Arizona limited
    liability company, JOHN AND JANE DOES I–X;
16  and WHITE CORPORATIONS I–X,                  (Assigned to Hon. Stephen C. Villarre)

17
18                Defendants.

19        Plaintiff hereby moves, and the parties have agreed, that Asset Campus Housing, by and

20  through its CFO, Randall Husmann, be appointed Receiver in the above-entitled action.

21  Borrower's counsel has agreed to the appointment of the receiver. [*See* Exhibit A, Declaration of

22  Borrower's Counsel]  A proposed order setting forth the powers and duties of the Receiver is

23  submitted herewith.

24

25

26

27

28

Dated: December 17, 2015

**PERKINS COIE LLP**

By: /s/ Kendra L. Kisling
    Brian C. Lake
    Kendra L. Kisling
    2901 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012-2788

*Attorneys for Plaintiff*

Original filed with the Court on
December 17, 2015

s/ Susan Carnall

-2-

# Exhibit A

Brian C. Lake (#020543)
Kendra L. Kisling (#030959)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
BLake@perkinscoie.com
KKisling@perkinscoie.com
docketphx@perkinscoie.com

*Attorneys for Plaintiff*

ARIZONA SUPERIOR COURT

PIMA COUNTY

| | |
|---|---|
| MLCFC 2006-3 – 811 E. WETMORE RD LLC, a Delaware limited liability company, | Case No. C20155598 |
| Plaintiff, | **DECLARATION OF BORROWER** |
| v. | |
| SEASONS PARTNERS LLC, an Arizona limited liability company, JOHN AND JANE DOES I–X; and WHITE CORPORATIONS I–X, | (Assigned to Hon. Stephen C. Villareal) |
| Defendants. | |

Bradley D. Sharp deposes and says:

1.      I am the Chief Restructuring Officer of Variant Holding Company, LLC, the ultimate indirect managing member of the borrower and Defendant in this action, Seasons Partners, LLC (the "Borrower") and make this declaration based on my personal knowledge and the pleadings on file in this matter.

2.      I am authorized to make this declaration on behalf of Borrower.

3.      On behalf of the Borrower, I have agreed with opposing counsel to the appointment of the receiver in this matter.

4.      On behalf of the Borrower, I have reviewed the proposed Order Appointing a receiver submitted by Plaintiff, and we have no objection to the Court appointing a receiver on the terms outlined in that proposed Order.

38935-0857/129052668.2

1       5.      The parties have not filed a formal stipulation appointing a receiver only because

2 the Borrower does not have counsel admitted to practice law in Arizona, and accordingly cannot

3 make a formal appearance in this case.

4

5       I declare under penalty of perjury that the foregoing is true and correct.

6       DATED this _17th_ day of _December_, 2015.

7

8                   **Seasons Partners, LLC**

9                   By: Fina Seasons, LLC
                  Its: Managing Member

10

11                       By: Conpartments, LLC
                      Its: Managing Member

12

13                           By: Variant Holding Company, LLC
                          Its: Managing Member

14

15                           Bradley D. Sharp
                          Chief Restructuring Officer

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT
# C

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| SEASONS PARTNERS, LLC, | Case No. 4:17-bk-01746-BMW |
| Debtor. | **DECLARATION OF RANDALL HUSMANN** |

I, Randall Husmann, hereby declare as follows:

1.    I am the Chief Financial Officer for Asset Campus Housing, Inc. ("ACH") which is located at 950 Corbindale Road, Suite 300, Houston, Texas.

2.    Seasons Partners, LLC owns real property and improvements located at 811 East Wetmore Road, Tucson, Arizona 85719, known as The Seasons Apartments, that holds itself out as student housing for local college students (the "Property"). The Property can house 500 beds in 142 units.

3.    On December 18, 2015, the Arizona State Court entered an order (the "Receivership Order") appointing ACH as receiver for the Property and student housing business. The Receivership Order grants ACH broad powers to manage, operate and sell the student housing business and Property.

4.    Since December 18, 2015, ACH has operated the student housing business and managed the Property. During that 15 month period, no one from Seasons Partners, LLC had contact with the Receiver regarding the operations and status of the Property or assets of Seasons Partners, LLC.

5.     In 2016, the secured lender was forced to advance $265,000 to the Receiver under the Receivership Order for needed expenses. The occupancy rate for 2016 averaged 73.92%. The 2016 year ended with cash of only $501. No debt service payments were made to the secured lender in 2016.

6.     The budget for March 2017 is attached. March 2017 is budgeted to have an operating loss of $103,000 due to the payment of real property taxes of $71,400 and needed capital expenditures of $76,500. The occupancy rate for March is budgeted to be 77%. While not reflected in the budget, the Receiver reserves on the books a liability of about $21,270 for student deposits on the rental units. On the petition date, after accounting for checks that have been written and after accounting for the reserve for student deposits, the Receiver had about $115,000 in available funds in the bank account. By the end of March, assuming the March expenses as budgeted are paid, the Receiver will have about $12,000 of cash which will be used in the coming months for expenses and losses. No debt service to the secured lender is included in the March budget.

7.     Since filing of the bankruptcy, the principals of the Debtor and Debtor's counsel have not made contact with ACH to address continuing critical obligations, including pre-petition payroll and utilities, to address the budget or to discuss post petition obligations.

Dated: March 7, 2016.

Asset Campus Housing, Inc., as Receiver for Seasons Partners, LLC

By:    Randall Husmann

Its:    Chief Financial Officer

FENNEMORE CRAIG, P.C.
PHOENIX

12660700

# EXHIBIT

# D

## The Seasons
## Tucson, AZ 85719

| | | | |
|---|---|---|---|
| 142 | = | Units | |
| 500 | = | Beds | |
| 181,720 | = | Sq Ft | |

|  | **March 2017** |
|---|---|
| Occupied Beds: | 385 |
| **OCCUPANCY %** | **77.00%** |
| | |
| Gross Market Rent | 223,424 |
| Contract Gain (Loss) to Lease | (7,000) |
| **Total Gross Potential Rent** | 216,424 |
| | |
| **Economic Variances** | |
| Employee Units | (5,094) |
| Model Units | (1,275) |
| Bad Debt | (2,234) |
| Vacancy Loss | (51,388) |
| **Total Economic Variances** | (59,991) |
| | |
| **NET RENTAL INCOME** | **156,433** |
| | |
| Other Income | 4,380 |
| **EFFECTIVE GROSS INCOME** | **160,813** |
| | |
| **OPERATING EXPENSES** | |
| | |
| General & Administrative | 4,853 |
| Payroll & Benefits | 35,693 |
| Contract Services | 6,855 |
| Repairs & Maintenance | 4,825 |
| Make-Ready Maintenance | 1,250 |
| Marketing | 16,601 |
| Cable / Internet | 13,411 |
| Utilities | 23,121 |
| Management Fees | 6,030 |
| Property Taxes | 71,400 |
| | |
| **TOTAL OPERATING EXPENSES** | **184,039** |
| | |
| **NET OPERATING INCOME (LOSS) BEFORE CAPITAL & OTHER EXPENSES** | **(23,226)** |
| | |
| Capital Expenditures | (76,500) |
| | |
| Bus Lease Payment | (1,838) |
| Receiver Fee | (2,010) |
| Total Other Expenses | (3,848) |
| | |
| **INCOME (LOSS)** | **(103,574)** |

# EXHIBIT

# E

# AUTHORIZING RESOLUTION

---

## FINA SEASONS, LLC

---

### Filing of Chapter 11 Bankruptcy for Seasons Partners, LLC

## RECITALS

A.     Conix, Inc. ("Conix") and John Fina ("Fina") entered into the Operating Agreement of Fina Seasons, LLC, a Delaware limited liability company ("Fina Seasons" or the "Company"), on or about September 13, 2010 (as amended, the "Operating Agreement").

B.     Conix and Fina entered into an amendment of the Operating Agreement on or about December 6, 2010.

C.     By a Notice of Election dated December 7, 2010, Conix notified Fina that Conix was the Manager of Fina Seasons, owned 90% by Conix and 10% by Fina.

D.     Conix, Fina, Holy Canoli, LLC ("Holy Canoli") and Conpartments LLC, a Delaware limited liability company ("Conpartments") entered into that certain Second Amendment to Operating Agreement effective January 1, 2011, recognizing and consenting to Fina's assignment of his Interest in the Company to Holy Canoli and Conix's assignment of its Interest in the Company to Conpartments. As a result, Conix and Fina are former members of the Company.

E.     BMC Apartments, LLC, an Indiana limited liability company, BJP Apartments, LLC, an Indiana liability company, Ivory Energy, LLC, an Oklahoma limited liability company, and Boiler 2000, LLC, an Indiana limited liability company (together "Lenders") loaned $1,000,000 to Conpartments in March 2012, evidenced by four Promissory Notes made and delivered by Conpartments to Lenders (the "Loan"). Repayment of the Loan was secured by Conpartments' interest in the Company by virtue of a Pledge and Security Agreement (the "Pledge") executed by Conpartments.

F.     The Company is the owner of 100% of the membership interests in Seasons Partners, LLC, an Arizona limited liability company ("Seasons"), which is the owner of a student housing facility known as The Seasons located in Tucson, Arizona ("Seasons Apartments").

G.     Variant Holding Company, LLC, a Delaware limited liability company ("Variant") represented that it was the 100% owner of Conix, which was the 100% owner of Conpartments.

1

H.    Variant filed a voluntary bankruptcy petition under chapter 11 in the United States Bankruptcy Court for the District of Delaware on August 28, 2014, case no. 14-12021 (BLS) (the "Variant Bankruptcy Case"). The Bankruptcy Case has not been dismissed. Bradley Sharp was appointed the chief restructuring officer for Variant.

I.    Conix took actions with respect to Seasons Apartments that damaged the property and its owner.   Eventually, Conix essentially abandoned management of Seasons Apartments prior to its bankruptcy. Variant took no meaningful steps to preserve the occupancy and value of the Seasons Apartments, which damaged the value of the property.

J.    Variant stipulated to entry of an Order: (I) Authorizing Debtor to Abandon Its Indirect Membership Interests in Seasons Partners, LLC; and (II) Authorizing Debtor to Take All Necessary and Appropriate Actions in Connection with the Foregoing filed on November 12, 2015 in the Variant Bankruptcy Case.

K.    MLCFC 2006-3 – 811 E. Wetmore Rd LLC, a Delaware limited liability company ("Secured Creditor") asserts it is the owner and holder of that certain Promissory Note dated August 24, 2006 (the "Note"), in the original principal amount of $20,500,000.00 executed by Seasons. As a result of alleged defaults under the Note, Secured Creditor has directed the foreclosure of Deed of Trust, Assignment of Leases and Rents, and Security Agreement dated August 24, 2006 (the "Deed of Trust") executed by Seasons, as grantor, in favor of Lawyers Title Agency of Arizona, as trustee, which was recorded in the Official Records of Pima County, Arizona (the "Official Records") on August 25, 2006, as Sequence No. 20061650282 in Docket 12876, Page 1323.  The foreclosure sale was scheduled for March 7, 2016 at 11:30 a.m. in Pima County without notice to Lenders or Holy Canoli.  The sale has since been continued on multiple occasions with the current sale date scheduled of September 29, 2016 at 11:30 a.m.

L.    Secured Creditor has obtained the appointment of a receiver for the Seasons Apartments in case no. C20155598 without notice to Lenders or Holy Canoli.

M.    On March 2, 2016, Lenders sought to negotiate with C-III Asset Management LLC ("C-III"), special servicer for Secured Creditor, concerning the pending foreclosure sale.  C-III has and continues to refuse to negotiate with Lenders.

N.    As a result of defaults under the Loan, Lenders foreclosed the Pledge through a Uniform Commercial Code sale on March 21, 2016.

O.    On March 23, 2016, by reason of their post-default remedies, Lenders acquired all of Conpartments' interest in the Company and transferred the interests to Windy City Seasons, LLC ("Windy City"), a Delaware limited liability company. Accordingly, the members of the Company are Holy Canoli and Windy City.

2

P.    By an amendment to the Operating Agreement of the Company effective March 3, 2016, Seasons Wetmore, LLC, an Arizona limited liability company ("Seasons Wetmore") was appointed manager of the Company.

Q.    On May 20, 2016, Robert M. Charles, Jr., counsel for the Company, emailed Lindsey Jewell, counsel for C-III, to inform her that Courtland Gettel ("Gettel"), the principal in Conpartments and Variant, as well as his attorney Jeffrey Greenberg, had pled guilty in federal court to financial fraud.  The charges included Conspiracy to Commit Wire Fraud and Conspiracy to Commit Money Laundering under Cause Numbers 16CR-1064-CKJ-BGM, 16CR-1099-WQH, and 16CR-1076-WQH.

R.    Besides the attempt on March 2, 2016, on February 19, May 19, and June 3, 2016, the Company sent loan modification proposals to C-III to work-out any alleged defaults under the Note, which were caused as a result of Gettel and his counterparts nefarious acts.

S.    On or about June 2, 2016, Seasons Wetmore evaluated the operational aspects of the Seasons Apartments after consultation with the on-site manager and determined that the property needed an advertising sign truck and a maintenance vehicle in order to improve the property's performance. Two vehicles were obtained on terms. The Company hereby ratifies those transactions.

T.    On August 10, 2016, Peter Cash Doye, one of Gettel's business partners, was indicted in federal court on seventeen counts including Wire Fraud, Conspiracy to Commit Wire Fraud, and Conspiracy to Commit Money Laundering under Cause Number 16CR-1562-TUC.

U.    On August 24, 2016, the Company's counsel received a letter from C-III's counsel rejecting all of the loan modification proposals made by the Company to avoid a Chapter 11 bankruptcy petition filing.

V.    On September 20, 2016, the Company's counsel sent an email once again stating the Company's desire to have discussions with C-III regarding a loan modification proposal.

W.    On September 21, 2016, C-III's counsel once again informed the Company's counsel that C-III has no desire to communicate or discuss any resolution with the Company.

X.    Effective October 6, 2016, in exchange for a promissory note in the amount of $1,500,000 payable to Holy Canoli, LLC, and through a transfer and assignment of membership interests, Holy Canoli, LLC transferred all of its rights, title and interests in Fina Seasons LLC, to Seasons Wetmore, LLC.

3

Y.     On February 16, 2017, Robert M. Charles received correspondence dated February 9, 2017, whereby the Note had been sold to Somera Road – Seasons Tucson, LLC, a Delaware limited liability company.

**WHEREFORE**, the undersigned, as the Manager and Members of Fina Seasons, LLC, a Delaware limited liability company, do hereby resolve that the Company has taken all necessary measures to avoid a Chapter 11 bankruptcy filing for Seasons Partners, LLC, and hereby authorize Seasons Wetmore as the Manager of the Company to take all actions reasonably necessary to protect the Seasons Apartments from foreclosure by the Secured Lender and to terminate the receivership, including hiring Smith & Smith as bankruptcy counsel and filing a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code.

This Authorizing Resolution shall not limit the authority of any person not mentioned herein and shall be in addition to, and not in limitation of, any rights possessed by such person by virtue of his position with the Company.

IN WITNESS WHEREOF, this Authorizing Resolution is hereby executed this 24th day of February, 2017

<u>**MEMBERS**</u>

Windy City Seasons, LLC, a Delaware limited liability company

DocuSigned by:

*Christian Pezzuto*

By ——— E3ED87001EA044D...

Its ___Manager___

<u>**MANAGER**</u>

Seasons Wetmore, LLC, an Arizona limited liability company

DocuSigned by:

*Christian Pezzuto*

By ——— E3ED87001EA044D...

Its ___Manager___

4